UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARCILIA HERNANDEZ-RAMIREZ,

    Plaintiff,

v.                                        CASE No. 8:08-CV-1719-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

### I.

The plaintiff, who was fifty-one years old at the time of the administrative hearing and who has a fifth grade education (Tr. 92), has worked at various jobs, including fruit harvester, vegetable harvester, cook,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

and housekeeper (Tr. 87, 514). She filed a claim for supplemental security income payments, alleging that she became disabled due to arthritis, abdominal pain, osteoporosis, diabetes, high blood pressure, and depression (Tr. 86). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de</u> <u>novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of diabetes, osteoporosis, arthritis, and a minimal education (Tr. 14).[2] The law judge determined that, despite these impairments, the plaintiff has the residual functional capacity to perform unskilled and semi-skilled light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 17). The law judge found that these limitations prevented the plaintiff from performing past work (Tr. 18). However, the law judge concluded, based upon the testimony of a vocational expert, that there exists in significant numbers in the national economy work that the plaintiff could perform, such as ticket seller, small parts assembler, toll collector, surveillance monitor, telephone solicitor, and

---

[2]The plaintiff claims that she is illiterate (Tr. 502). However, the person who completed her disability forms noted that she reads as an activity (Tr. 112, 117).

lens inserter (Tr. 19). The law judge therefore decided that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 416.920(c).

When an impairment is severe, but does not meet, or equal, an Appendix 1 listing (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 416.920(g).

III.

The plaintiff challenges the law judge's decision on two grounds. Neither warrants reversal.

The plaintiff contends, first, that the law judge erred by failing to find that a torn meniscus in the plaintiff's right knee was a severe impairment (Doc. 23, p. 5). In step two of the sequential analysis, the law judge concluded that the plaintiff had certain severe impairments, including arthritis, but that plaintiff's depression, abdominal pain, hypertension, headaches, and visual problems were non-severe as defined in the regulations (Tr. 16). The law judge did not specifically state whether the plaintiff's knee impairment was severe or non-severe.

The plaintiff alleges that her right knee impairment became "more of a problem" in April 2007 (Doc. 23, p. 8). At that time, the plaintiff injured her knee while moving furniture (Tr. 318, 327). Subsequent exams in April and May 2007 revealed mild osteoarthritis of the right knee (Tr. 348), and degenerative arthritis with a "small tear of [the] post horn medial meniscus" (Tr. 436).

The law judge, in his summary of the evidence, recognized that the plaintiff complained at times to providers about right knee pain, along with a number of other ailments (Tr. 15). As indicated, he did not make a separate assessment of that alleged condition. That failure, however, does not support reversal for several reasons.

In the first place, the plaintiff did not raise a right knee problem before the law judge. Thus, the plaintiff's attorney was afforded an opportunity to make an opening statement, and he did not mention a right knee impairment (Tr. 499-501). Furthermore, the plaintiff, although mentioning other alleged impairments, did not testify that she was having any problem with her right knee. When asked by her attorney "is there anything we've missed, anything about your condition?", she responded, "No, sir" (Tr. 513).

In similar circumstances where a plaintiff had failed to raise an impairment in his application and testimony, the Eleventh Circuit said that "[t]his failure alone could dispose of his claim." Street v. Barnhart, 2005 WL 1164202 at *6 (11th Cir. 2005)(unpub. dec.). In this respect, the court agreed "that an administrative law judge is under no 'obligation to investigate a

claim not presented at the time of application for benefits and not offered at the hearing as a basis for disability.'" Id., quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996). Therefore, the plaintiff's failure to alert the law judge at the hearing that she was claiming a significant right knee impairment is sufficient, by itself, to defeat the claim.

In all events, the plaintiff's contention is unpersuasive. Notably, it appears that the plaintiff's complaints of right knee pain (which the law judge acknowledged (Tr. 15)) are covered by the law judge's finding that the plaintiff had a severe impairment of arthritis. Thus, there was a diagnosis of "[d]egenerative arthritis with mild meniscal tear posterior horn" (Tr. 453); see also Tr. 348 ("mild osteoarthritis can be noted involving the medial compartment"). Since the diagnosis of a mild meniscal tear was included with the diagnosis of degenerative arthritis, the law judge's finding that the plaintiff had a severe impairment of arthritis seems adequate to encompass the meniscus problem.

Further, the law judge determined that the plaintiff's severe impairments, including her arthritis, restricted the plaintiff to light work with only occasional climbing, balancing, stooping, kneeling, crouching, and

crawling (Tr. 17). The evidence does not show that the plaintiff's meniscus problem imposed any greater limitations than these. Consequently, even if the law judge erred in failing to separately address the mild meniscus tear, that error would be harmless.

In addition, the medical records demonstrate that the plaintiff's meniscus problem was not a significant impairment. On May 10, 2007, an MRI revealed "oblique undersurface and small radial tears of the posterior horn medial meniscus" (Tr. 458). On October 4, 2007, Dr. Roy W. Sanders reported that the plaintiff, who walks with a cane, had significant pain but that this was resolved somewhat (Tr. 452). He said that the MRI was "significant for very minimal radial tears of posterior horn of medial meniscus" (id.). He stated that the clinical examination "is really benign," that the plaintiff "has some mild tenderness to the medial joint line," and that the "[r]est of the exam is normal" (id.). As previously indicated, his impression was of "[d]egenerative arthritis with mild meniscal tear posterior horn" (id.). He planned to treat the plaintiff conservatively with Motrin and Tylenol, which she was already taking for back pain (id.).

A note of November 9, 2007, indicates that the plaintiff complained about, among other things, right knee pain (Tr. 450). The note stated, however, that the condition was "current[ly] asymptomatic" (id.).

The plaintiff, on February 5, 2008, had a routine follow-up appointment at which issues were discussed regarding the plaintiff's right knee, right shoulder, right heel, and lower back (Tr. 436). The note said pertinently that the patient states that her right knee and right shoulder are "much better" since finishing prednisone (id.). With respect to the right knee, the note, other than referring to the MRI of May 7, 2008, simply said that there was "tenderness" on the medial joint line of the right knee (id.). There was to be a follow-up in six months (id.).

The heading of the plaintiff's argument is that the law judge erred in failing to find the "plaintiff's condition of torn meniscus to be severe" (Doc. 23, p. 5), but then contends that the law judge "made no findings with respect to the Plaintiff's knee impairment" (id., p. 7). To the extent that the plaintiff argues that the law judge made no findings regarding the plaintiff's knee in general, as distinct from the meniscus tear, that argument is incorrect. The plaintiff was diagnosed with arthritis in her right

knee (Tr. 452; see also Tr. 348). The law judge recognized that the plaintiff sought treatment for right knee pain (Tr. 15), and found that the plaintiff had a severe impairment of arthritis (Tr. 14). Moreover, he imposed functional limitations (Tr. 17). These findings adequately address the plaintiff's right knee impairments in general.

While the law judge did not specifically discuss the torn meniscus, that problem seems to be covered by the law judge's general finding regarding the plaintiff's knee impairment. Notably, a treating doctor assessed the knee conditions together (Tr. 453).

In any event, even if the failure to discuss the torn meniscus was error, the error was harmless. Thus, the medical evidence demonstrates that the defect was not a severe (i.e., significant) impairment. Thus, for example, the tear was described as "very minimal" (Tr. 452). Furthermore, the failure of the plaintiff and her attorney to even mention a knee impairment at the administrative hearing shows that the impairment was not significant.

Moreover, assuming arguendo that the torn meniscus was a severe impairment in that it significantly limited the plaintiff's ability to work, there is no basis in the evidence for a conclusion that it imposes greater

functional limitations than set forth by the law judge. This is shown by the medical evidence previously set forth discussing the problem, as well as by the fact that no doctor has opined that the plaintiff has any functional limitations due to the torn meniscus.

The plaintiff's claim that the law judge erred in failing to find that the plaintiff's torn meniscus was a severe impairment therefore lacks merit. Moreover, as stated at the outset, this contention is due to be rejected as a result of the plaintiff's failure to raise this alleged impairment at the administrative hearing.

The plaintiff contends also that the law judge's credibility determination was deficient. Specifically, she claims that the law judge erred in rejecting the plaintiff's claim of disabling pain by exaggerating her daily activities (Doc. 23, pp. 8-11). Contrary to the plaintiff's assertions, the law judge gave proper consideration to the plaintiff's allegation of disabling pain.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required

evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n. 6 (11th Cir. 1985).

The law judge recognized the need to apply this standard and cited the pertinent regulation and Social Security rulings (Tr. 17). Moreover, he quoted the governing principles (id.).

Further, the law judge provided the following explanation in assessing the plaintiff's testimony (Tr. 17-18):

> In determining that the claimant is able to perform essentially a full range of light work, the undersigned has considered a number of factors, an important one of which is that none of the physicians who have examined and/or treated the claimant have stated that she is disabled nor have they imposed any limitations upon her which

> would limit her to less than essentially a full range of light work....
>
> The evidence indicates that the claimant takes care of her seven-year old grandson. The undersigned takes note that the activities involved in childcare is equivalent to no less than light work.
>
> The claimant testified that she suffers significant pain. She does not document that she takes any medication for any condition. The evidence reveals that her pain improved with treatment. She testified that she sweeps, washes clothes, and takes care of her grandson. On September 19, 2005, she reported that she drove, did housework, cleaned, shopped, watched television occasionally, and took care of her grandson. On July 6, 2005, she reported that she cooked, cleaned her house, went and paid bills, cared for her grandson, did laundry, shopped, drove, read occasionally, watched television, and visited. (Exhibit 6E) Those activities are consistent with an ability to perform essentially a full range of light work.

This discussion was adequate, reasonable, and supported by substantial evidence. Thus, the law judge considered the lack of any opinions from treating or examining doctors asserting that the plaintiff is disabled, or even has functional limitations greater than those found by the law judge; the absence of documentation of medication; evidence showing her pain improves with treatment; and her activities of daily living.

The plaintiff's challenge to the law judge's credibility determination focuses upon the activities of daily living (Doc. 23, pp. 9-10). The argument, on its face, is insufficient. As indicated, the law judge considered other factors which the plaintiff has not challenged in making her attack on the credibility determination. Thus, even if the plaintiff is able to raise questions about the significance of the daily activities, it would not compel a contrary determination.

Also, to the extent the plaintiff suggests that activities of daily living are inappropriate for consideration, that suggestion is incorrect. The law judge is clearly authorized to consider those activities in making his disability determination. See, e.g., Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984). Indeed, the regulations specify that activities of daily living will be taken into account in making a credibility determination. 20 C.F.R. 416.929( c)(3)(i).

The plaintiff argues that the law judge mischaracterized her daily activities since she testified that she cannot function like she used to (Doc. 23, p. 9). However, the law judge recognized the plaintiff's testimony in that

respect (Tr. 14-15). What the law judge considered were activities that the plaintiff acknowledges she could perform.

Notably, the law judge did not reject all of the plaintiff's testimony. Rather, he simply discounted the testimony that was inconsistent with the residual functional capacity that he found to exist (Tr. 17).

Finally, the plaintiff complains about the law judge's statement "[t]he undersigned takes note that the activities involved in childcare is equivalent to no less than light work" (Doc. 23, p. 10). However, the law judge could reasonably draw the inference that taking care of a boy between the ages of three and seven involves activities that fall within the requirements for light work. 20 C.F.R. 416.967(b) (lifting up to twenty pounds with a good deal of walking or standing). In fact, at ages three to four, it probably approximates medium work. 20 C.F.R. 416.967(c)(frequent lifting up to twenty-five pounds with some lifting over that amount up to fifty pounds). And, of course, the workday is not limited to eight hours.

The plaintiff asserts that she testified that her husband and the boy's father help her (Tr. 509). However, the plaintiff's husband works and the boy's father does not reside with the plaintiff (Tr. 508). Consequently, the

law judge could reasonably infer that the amount of help with childcare that they provide is insignificant.

Furthermore, the law judge did not base his credibility determination merely on the view that childcare is equivalent to at least light work. Rather, childcare – which is plainly a legitimate consideration – was only one type of daily activity that the law judge took into account. And, daily activities were only one factor in the law judge's credibility determination. Accordingly, the law judge's consideration of childcare did not invalidate that determination.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 6th day of September, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE